People v Ford (2025 NY Slip Op 50675(U))

[*1]

People v Ford

2025 NY Slip Op 50675(U)

Decided on April 29, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 29, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Elizabeth Ford, Defendant.

Docket No. CR-010862-25BX

People: Bronx County District Attorney's Office by ADA Julie Naanes and ADA Ashley Ward-Willis
Defendant: The Law Office of Kerry Lawrence PLLC by Kerry Lawrence, Esq.

Daniel M. Lewis, J.

On April 19, 2025, Defendant was arraigned on VTL § 1192(2) and other related charges, alleging that on April 19, 2025, at approximately 1:15AM at Longstreet Avenue and Wissman Avenue in the Bronx, she operated a motor vehicle while her blood alcohol content exceeded 0.08 of one per centum by weight. The arraigning judge, J. Moore, suspended Defendant's New York State driver's license pursuant to VTL § 1193(2)(e)(7)(a). Defense counsel requested that the case be adjourned for a hearing to present evidence of extreme hardship under VTL § 1193(2)(e)(7)(e).
On April 22, 2025, the undersigned held the hardship hearing. Below constitutes the Court's findings of fact and law from that hearing.
 Findings of Fact
Rebecca Ford
Defense first called Rebecca Ford, who testified that she is Defendant's sister and lives one mile from Defendant's residence in Pelham, New York. Ms. Ford further testified that Defendant works as a pediatrician at a clinic in Wakefield in the Bronx; lives with her two children, ages 12 and 14; and is currently going through divorce proceedings, which are resulting in "incredible expenses" owing to the costs of a mediator, a private attorney, and an estate attorney.
According to Ms. Ford, Defendant leaves her residence on a typical day at approximately 8:00AM, drives her children to school, and then proceeds to work. The entire trip takes about 20 [*2]minutes. Defendant typically works until 5:00PM and then drives home. Defendant also provides transportation to and from her children's extracurricular activities during the week and on the weekend. Ms. Ford stated that Defendants spends about $35.00 per week on gas. 
Ms. Ford stated that Defendant's only public transportation option to work was the 42 bus, which would take about an hour each way and is unreliable because it has a 57% on-time rate. Although the cost would not pose a financial hardship, Defendant's reliance on public transportation would require that she depart earlier, thereby leaving her children to take care of themselves before school. Additionally, it would prevent her from providing any transportation for her children's extracurricular activities. Moreover, if Defendant left later or public transportation proved unreliable, her patients would be negatively impacted.
Ms. Ford also testified that Defendant's estimated monthly cost to or from work via car service would be $1,000.00 each way, although she acknowledged not knowing whether departures at different times would affect the cost. Nonetheless, Ms. Ford stated that the cost of a car service, combined with the expenses from Defendant's divorce proceedings and from her children's extracurricular activities, would create an extreme financial hardship.
Regarding alternate means of transportation, Ms. Ford stated that neither she nor her husband can be depended upon to drive Defendant and her children on weekday mornings because Ms. Ford takes public transportation, and her husband is frequently out of town. Similarly, Ms. Ford and her husband cannot be depended upon on the weekends because they frequently travel out of state to visit their children. However, Ms. Ford did acknowledge that she could adjust her weekend schedule as needed.
The remainder of Defendant's family, an 87-year-old mother in New Jersey, a brother in Brooklyn with three young children, a sister in the Bronx with three children, a sister in Milan, New York, and a brother in Ossining, New York — are all licensed drivers. However, Ms. Ford did not know if they would be willing to help, but did not think it would be realistic for those living in Brooklyn, Milan, and Ossining. 
Dr. Elizabeth Ford (Defendant)
Defense's final witness was Dr. Elizabeth Ford, Defendant in the instant matter. Defendant testified that no bus existed near Defendant's home that could take her children to school. However, on cross-examination, Defendant acknowledged being surprised to learn that there was a public bus stop approximately five minutes by foot from her home and that the bus stopped near her children's school.
Judicial Notice
The Court took judicial notice of the following defense exhibits with the People's consent:
A. Two Google Map printouts: 1) The 42 bus route from Defendant's home to her work, with fifteen minutes of total walking time to the bus stops and a total commute time of 50 minutes from 4:16PM to 5:05PM; and 2) The 42 bus route from Defendant's work to her home, with fifteen minutes of total walking time to the bus stops and a total commute time of 50 minutes from 4:21PM to 5:10PM.
B. UberX reservation printout with a pickup time at 7:45AM from Defendant's home to [*3]her work with a cost of $26.99.
C. Direct deposit notification to Defendant's email.
D. Two Google map printouts: 1) The driving route from Defendant's home to her work, totaling 20 minutes; and 2) The driving route from Defendant's home to her work with one stop at Pelham Middle School in between, totaling 22 minutes.
The Court took judicial notice of the following People's exhibits with defense's consent:
1. Two Google map printouts: 1) The 42 bus route leaving from Defendant's home at 8:46AM and arriving at Defendant's work at 9:28AM, with a total commute time of 42 minutes; and 2) The 42 bus route leaving from Defendant's work at 6:36PM and arriving at Defendant's home at 7:23PM, with a total commute time of 47 minutes.
2. Four printouts from car services: 1) UberX ride from Defendant's home to her work with a 9:30AM drop off time, totaling $20.00; 2) UberX ride from Defendant's work to her home, arriving at 5:53PM and totaling $17.73; 3) Lyft ride from Defendant's home with a pickup time of 9:10AM to her work, totaling $23.88; and 4) Lyft ride from Defendant's work to her home, arriving at 6:11PM and totaling $26.27.
3. A printout of Westchester County bus fares, showing regular costs of $2.75 for a single ride, $34.00 for a weekly unlimited MetroCard, and $132.00 for a 30-day unlimited MetroCard.

Findings of Law
The Court finds Ms. Ford and Defendant to be credible witnesses, as they testified truthfully. Although the People rebutted Ms. Ford's testimony with printouts of map routes and car service costs that differed from those she testified to on direct, the differences were minimal enough as to not compromise her credibility on the stand. Similarly, while the People challenged Defendant's assertion that no public bus was available to take her children to school, the Court credits her testimony that she was unaware of this option.
Under VTL § 1193(2)(e)(7)(e), a court may grant a "hardship privilege" if it finds that suspending a defendant's driving privileges "will result in extreme hardship." The statute places the burden of proving extreme hardship on the licensee and a finding of extreme hardship "may not be based solely upon the testimony of the licensee." (Id.) The statute defines "extreme hardship" as "the inability to obtain alternate means of travel" in one of three specific situations:
"[1] to or from the licensee's employment, or [2] to or from necessary medical treatment for the licenses or a member of the licensee's household, or [3] if the licensee is a matriculating student enrolled in an accredited school, college or university travel to or from such licensee's school, college or university if such travel is necessary for the completion of the educational degree or certificate." (Id.)
Defendant in the instant matter seeks a hardship privilege, in part, to drive her minor children to school and sporting activities. However, VTL § 1193(2)(e)(7)(e) only provides for the driving of a defendant's family members when those family members require medical treatment. Transport to and from school or employment only applies to the defendants themselves. Therefore, this Court cannot consider any non-medical hardship accruing to Defendant's family members as a result of Defendant's driver's license suspension, and those [*4]non-medical hardships cannot form the basis for a hardship privilege.
Alternatively, Defendant seeks a hardship privilege based on an inability to obtain alternate means of travel to and from her place of employment. Although not binding on this Court, the factors set forth in People v. Bridgman (163 Misc 2d 818, 820 [City Court, City of Canandaigua 1995]) provide a useful framework for the hardship privilege analysis. Those factors are:
"(1) the presence or absence of licensed persons present in the licensee's household; (2) the ability of other licensed household members to provide transportation for the licensee; (3) the occupation and health condition of the licensee; (4) the proximity of the licensee's place of employment, health care provider or school to his or her household; (5) the presence or absence of any public transportation or taxi service to or from the licensee's household to the place of employment, health care provider or school; (6) a consideration of the licensee's ability to afford public transportation or taxi service as an alternative means of transportation; (7) the presence or absence of co-workers, friends or family members who may assist in the licensee's transportation; and, (8) any other factor that the court deems appropriate to the determination." (Id.)
In addition to the Bridgman factors, this Court previously added the factor of feasibility of public transportation or car service in addition to the affordability of the same. (See People v. Phipps, 84 Misc 3d 1243[A], 2024 NY Slip Op 51672[U], *3 [Crim. Ct., Bronx County 2024]).
In the instant matter, Bridgman factors one and two tend toward a finding of extreme hardship. Defendant has no other licensed person in her household and, by extension, none that could provide transportation for her, as she lives alone with her two minor children. The Court disregards factor three, as no testimony was elicited regarding any health condition that would hinder Defendant's ability to take alternate transportation.
The remaining Bridgman factors and the Phipps factor militate against a finding of extreme hardship. Exhibits proffered by defense and the prosecution demonstrated the availability of public transportation and car services. Ostensibly, the commute time via car service would be congruent to that of Defendant driving herself. Via bus, the estimated commute time is one hour each way, a duration that Ms. Ford acknowledged was not unreasonable and one that she experiences daily. Regarding affordability, public transportation is clearly affordable to Defendant. Nonetheless, Defendant urges this Court to disregard public transportation as a viable option given its unreliability, thus reducing Defendant to dependence on a car service, an unaffordable option given her current situation and therefore an extreme hardship. However, Defendant's assertion of complete reliance on a car service is a flawed assumption, not borne out by the record. Indeed, defense's own witness acknowledged that Defendant could depend on public transportation more than half of the time, and no testimony indicates such a cost would be similarly unaffordable despite the drastic reduction. Finally, Defendant has several relatives, all licensed drivers, several of whom live close enough to Defendant as to not disregard their potential to help, once they are apprised of Defendant's license suspension and their help is requested.
For the foregoing reasons and considering the factors in Bridgman and Phipps, the Court finds that Defendant has failed to establish extreme hardship under VTL § 1193(2)(e)(7)(e) (see also People v. Luja, 82 Misc 3d 469, 477 [Crim. Ct., Bronx County 2023]). Therefore, Defendant's request for a hardship privilege is DENIED.
The foregoing constitutes the decision and order of the Court.
Dated: 29 April 2025
Bronx, New York
DANIEL M. LEWIS, J.C.C